IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VICTOR RANDOLPH TURNER, JR., § | | |
| TDCJ #1326957, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-10-5223 |
| § | | |
| RICK THALER, Director, § | | |
| Texas Department of Criminal Justice - § | | |
| Correctional Institutions Division, § | | |
| § | | |
| Respondent. § | | |

## MEMORANDUM AND ORDER

The petitioner, Victor Randolph Turner, Jr. (TDCJ #1326957, former TDCJ #1148489, #1130928, #342300), is a state inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Turner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a prison disciplinary conviction. The respondent has filed a motion for summary judgment, arguing that Turner is not entitled to relief. (Docket No. 6). Turner has filed a response. (Docket No. 8). After reviewing all of the pleadings, the administrative records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

### I.      BACKGROUND

Turner is presently incarcerated as the result of more than one felony conviction from Fort Bend County for evading detention or arrest and unauthorized use of a motor

vehicle. Turner does not challenge any of his underlying convictions here. Instead, he challenges the result of a prison disciplinary proceeding lodged against him at the Wynne Unit in Huntsville, where he is currently assigned.

The respondent has provided the report and record of the administrative investigation, which includes an audiotape of the proceeding. (Docket No. 7). These records show that, on September 1, 2010, Turner received notice that he was being charged with violating prison rules in disciplinary case #20110000319 by establishing an inappropriate relationship with an officer. Turner was present at the hearing, where he was assisted by a "counsel substitute." Turner was allowed to question witnesses, including Major Andre Watson and the charging officer, Sergeant Dominick Yanez, who conducted the investigation. Based on the charging officer's report and the testimony about the investigation, a disciplinary captain found Turner guilty as charged following a hearing on September 3, 2010. As a result of the disciplinary conviction, Turner was restricted to his cell without commissary privileges for 45 days. Turner also spent 15 days in solitary confinement. In addition, Turner forfeited 90 days of previously earned credit for good conduct (*i.e.*, "good-time credit"). Turner challenged the result of his disciplinary proceeding by filing a Step 1 and Step 2 grievance, but his appeal was unsuccessful.

Turner now seeks a federal writ of habeas corpus challenging his disciplinary conviction, which resulted in the loss of good-time credit. Turner complains that the disciplinary conviction violated his right to due process because he was "not allowed to

call all witnesses and question them." Turner claims further that the charges were false and that the conviction was not supported by sufficient credible evidence. The respondent notes that the grievances filed Turner reference only his claim concerning the credibility and sufficiency of the evidence. The respondent maintains that Turner did not exhaust available administrative remedies by raising all of his claims during the appeal process. The respondent argues further that Turner is not entitled to relief because his claims are without merit. The parties' contentions are discussed below under the standard of review that governs habeas review of prison disciplinary proceedings.

## II.     DISCUSSION

### A.     Exhaustion of State Administrative Remedies

In the pending motion for summary judgment, the respondent contends that the Turner did not exhaust available state remedies by presenting all of his grounds for relief during the prison grievance process. In support of this claim, the respondent has provided copies of the relevant step 1 and step 2 grievances submitted by Turner to challenge the result of his disciplinary conviction. The grievances reflect that Turner complained only about the credibility and sufficiency of the evidence, but raised none of his other claims. The respondent argues, therefore, that Turner failed to exhaust available remedies prior to seeking federal habeas corpus review of these issues.

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies

available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Moore v. Quarterman*, 454 F.3d 484, 490-91 (5th Cir. 2006) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (internal citations and quotations omitted)). Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1)(B).

Texas prisoners are not required to present claims concerning disciplinary convictions to the state courts in a state habeas corpus application, because those claims are not cognizable on state habeas review. *See Ex parte Brager*, 704 S.W.2d 46, 46 (Tex. Crim. App. 1986). Instead, Texas prisoners who challenge the result of a disciplinary conviction must seek relief through the two-step TDCJ grievance process.[1] *Id.* In that regard, § 501.008 of the Texas Government Code requires inmates to fully exhaust the TDCJ administrative grievance process before resorting to court. If an inmate fails to do

---

[1] TDCJ currently provides a two-step procedure for presenting administrative grievances. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). In Step 1, the prisoner submits a grievance at the institutional level. *Id.* If the decision at Step 1 is unfavorable, Step 2 permits the prisoner to appeal "to the division grievance investigation with the . . . Texas Department of Criminal Justice." *Id.*

so, his claims may be dismissed for failure to exhaust administrative remedies. *See Ex Parte Stokes*, 15 S.W.3d 532, 533 (Tex. Crim. App. 2000).

Turner's habeas corpus petition is arguably governed by 28 U.S.C. § 2254. *See, e.g., Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) ("State prisoners who allege that they were improperly denied good-conduct credit that, if restored, would have resulted in their immediate or sooner release from prison, fall under § 2254.") (citations omitted). Courts in this circuit have recognized that exhaustion of the prison grievance process is required in the disciplinary conviction context. *See, e.g., Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002) (holding that "the timely pendency of prison grievance procedures" tolls the statute of limitations for habeas corpus petitions found in 28 U.S.C. § 2244(d) because prisoners are required to pursue administrative remedies); *Foley v. Cockrell*, 222 F. Supp. 2d 826, 829 (N.D. Tex. 2002) (holding that, "[b]ecause exhaustion of administrative grievance procedures is required, Petitioner is entitled to equitable tolling of the statute of limitations until the date that he completed the TDCJ administrative review process"). Although decisions about prison grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process. *See Prieser v. Rodriguez*, 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority

and expertise, the States have an important interest in not being bypassed in the correction of those problems").

The record confirms that Turner did not present all of his grounds for relief in both step 1 and step 2 of the prison grievance process, where he complained primarily about the credibility and the sufficiency of the evidence against him. A prisoner must complete both steps of the grievance process to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Because Turner did not complete both step 1 and step 2 of the grievance process with respect to the other claims in his pending petition, he failed to fully exhaust the prison grievance process with respect to those allegations. Turner has filed a response to the summary judgment motion, but he offers no valid explanation for his failure to present all of his claims properly during the grievance process. It follows that, with the exception of Turner's challenge to the sufficiency of the evidence, all of his other claims are subject to dismissal for lack of exhaustion. Alternatively, the respondent argues that Turner fails to establish a constitutional violation and that his petition fails for other reasons outlined briefly below.

**B.     Due Process and the Prison Disciplinary Hearing**

Turner seeks a writ of habeas corpus challenging the result of a prison disciplinary conviction that resulted in loss of privileges, a reduction in classification status, and the loss of good-time credit. The federal writ of habeas corpus is an extraordinary remedy which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3) & 2254(a);

*Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). To prevail, a habeas corpus petitioner must establish a constitutional violation.

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause *only* when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). A convicted prisoner does not have a constitutional right to conditional release before the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Likewise, the Constitution does not guarantee an inmate good-time credit for satisfactory behavior while in prison. *Wolff*, 418 U.S. at 557; *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Absent a showing that his disciplinary conviction has implicated a constitutionally protected interest, a prisoner's due process claim depends on the existence of an interest created by state law.

The Supreme Court has decided that only those state-created substantive interests which "inevitably affect the duration of [a prisoner's] sentence" may qualify for

constitutional protection under the Due Process Clause. *Sandin*, 515 U.S. at 487. It is well established that sanctions resulting in a loss of privileges, a temporary cell restriction, and a reduction in classification do not warrant such protection.[2] By contrast, when a state creates a right to time credit for good conduct, and recognizes that its revocation is an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Madison*, 104 F.3d at 768 (citing *Wolff*, 418 U.S. at 557).

The Fifth Circuit has recognized that Texas inmates who are eligible for the form of parole known as mandatory supervision have a constitutional expectancy of early release.[3] *See Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) (addressing the

---

[2] According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *See id.* The Fifth Circuit has also decided that reductions in a prisoner's class status and the potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

[3] There are two ways in which a state prisoner becomes eligible for early release from confinement in Texas. The first is by "parole" and the second is by release on "mandatory supervision." *See* TEX. GOV'T CODE § 508.001(5)-(6) (Vernon 2004). Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007).

mandatory supervision scheme in place prior to September 1, 1996); *see also Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007) (addressing the mandatory supervision scheme in place before and after September 1, 1996). Texas inmates who are eligible for mandatory supervision have a protected liberty interest in the good-time credits that they have earned. *See Malchi*, 211 F.3d at 956. Therefore, when sanctions are imposed for disciplinary violations, Texas prison officials cannot forfeit good-time credits from inmates who are eligible for mandatory supervision without first affording due process. *See id.*

As a result of the disciplinary conviction at issue, Turner forfeited 90 days of previously earned good-time credit. It appears that Turner is eligible for mandatory supervision. To the extent that Turner had a liberty interest in good-time credit accrued toward his potential early release on mandatory supervision, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances. *See Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court considered the minimum level of due process required in the prison disciplinary context. In doing so, the Supreme Court recognized that prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Id.* at 561. Because

prison disciplinary hearings are "not part of a criminal prosecution," the Court reasoned that "the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). The minimum amount of procedural due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *See Wolff*, 418 U.S. at 563-67.

Turner does not complain that he received insufficient notice of the charges. Likewise, he does not claim that he was denied a written statement of the reason for his conviction. Turner does contend that he had an inadequate opportunity to call witnesses. The audiotape of the disciplinary hearing reflects that the only witness that Turner requested was Major Watson. Major Watson appeared at the hearing, along with Sergeant Yanez, and Turner had the opportunity to question both of them through his counsel substitute. The disciplinary hearing record reflects that Turner did not request any additional witnesses. *See TDCJ Report and Hearing Record* (Docket No. 7). Based on this record, Turner fails to demonstrate that he was denied the minimum level of procedural due process as dictated by the Supreme Court in *Wolff*, 418 U.S. at 563-67.

Turner claims that his disciplinary conviction violates due process, nevertheless, because the charges were not supported by sufficient credible evidence. In addition to the procedural safeguards articulated in *Wolff*, disciplinary sanctions imposed by prison officials must be supported by "some evidence" to be consistent with due process. *See Hill*, 472 U.S. at 457; *Broussard v. Johnson*, 253 F.3d 874, 876-77 (5th Cir. 2001). It is well settled, however, that "federal courts cannot retry every prison disciplinary dispute; rather the court may act only where arbitrary or capricious action is shown." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994). In other words, when reviewing a prison disciplinary decision, "the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion." *Smith v. Rabalais*, 659 F.2d 539, 543 (5th Cir. Unit A 1981); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995); *Turner v. Johnson*, 46 F. Supp. 2d 655, 660 (S.D. Tex. 1999). To satisfy the Due Process Clause in the context of prison disciplinary proceedings "requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. "The goal of this standard — variously a 'modicum of evidence,' 'any evidence,' or 'some evidence' — is to balance the need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens." *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001) (citing *Hill*, 472 U.S. at 455). Thus, federal habeas corpus courts "do not assess the weight of the evidence" when reviewing prison disciplinary

proceedings, and need only examine whether the guilty finding has the "support of 'some facts' or 'any evidence at all.'" *Hudson*, 242 F.3d at 537.

As noted above, Turner was charged with violating prison rules by establishing an inappropriate relationship with an officer, which is a Level 2, Code 30.2 violation of the TDCJ-CID Disciplinary Rules and Procedures for Offenders. In particular, Turner was accused of establishing a relationship by exchanging letters with a female correctional officer assigned to the Wynne Unit. During the disciplinary proceeding, Turner denied writing to the officer in question. He claimed that he was writing to someone named "Angel" at a "pen pal box," and that he did not know the woman he was writing to was a correctional officer. Sergeant Yanez, who investigated the charges against Turner, determined that the P.O. Box on the correspondence in question was rented by the female correctional officer at issue. Sergeant Yanez testified that the female correctional officer resigned after an investigation revealed that she was corresponding with offenders at the Wynne Unit. During that investigation, the female officer admitted that she rented the P.O. Box in order to avoid detection by Wynne Unit Administration. The record contains a letter that is addressed to Turner from the female officer. Sergeant Yanez determined that this letter was written by the female officer in response to a letter that she received from Turner.

A charging officer's report and testimony is sufficient evidence to sustain the disciplinary conviction in this instance. *See Hudson*, 242 F.3d at 537 (finding that the offense report, standing alone, meets the "some evidence" standard). Although Turner

disputes the hearing officer's decision, a federal habeas corpus court may not weigh evidence when reviewing a prison disciplinary proceeding. *See Hill*, 472 U.S. at 455; *Hudson*, 242 F.3d at 537. A prison disciplinary conviction may be overturned only "where no evidence in the record supports the decision." *Broussard*, 253 F.3d at 877. Because there was some evidence to support the guilty finding, this Court must defer to the disciplinary hearing officer. *See Hudson*, 242 F.3d at 537. Turner has not demonstrated that he was denied due process or that the challenged disciplinary conviction fails for lack of sufficient evidence. Nor has he shown that the charges or any of the evidence against him at the hearing were false. Accordingly, the respondent is entitled to summary judgment and the petition must be dismissed.

## III.    CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Docket No. 6) is **GRANTED**.

2. The federal habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 8th day of August, 2011.

_____

Kenneth M. Hoyt
United States District Judge